YEOMAN MUTUAL LIFE INSURANCE COMPANY, Plaintiff, Appellant, v. STATE BOARD OF ASSESSMENT AND REVIEW et al., Defendants, Appellants.

No. 45023.

OCTOBER 22, 1940.

J. R. McManus and Merle H. Johnson, for plaintiff, appellant.

Charles Hutchinson and Fred T. Van Liew, for defendants, appellants.

HALE, J.—This is an appeal by both parties from the decree of the district court fixing the valuation for taxation on lots 7 and 8, block B, Commissioner's Addition to Des Moines, on which is a building known as the Liberty Building. The Yeoman Mutual Life Insurance Company (which appears now to be known as the American Mutual Life Insurance Company), owner of the building and liable for the taxes on the property, will be hereafter designated as plaintiff, and the State Board of Assessment and Review et al., as defendants. The value as originally fixed by the assessor was, for the land $184,562, and for the building $447,344, a total of $631,906. Being dissatisfied with this valuation, plaintiff, on October 8, 1934, filed a petition with the State Board of Assessment and Review, complaining that the assessment was unjust, inequitable, and excessive, and alleging that it should be reduced in the amount of $131,906. The State Board, on December 27, 1935, refused to change the assessment, from which order plaintiff served notice of appeal to the district court. On March 26, 1936, defendants filed motion to dismiss the appeal, on the grounds: first, that there is nothing on file to show that there was any matter pending before the State Board from which an appeal could be taken; second, for failure to comply with section 11440 of the Code of 1935 as to prosecuting and docketing of appeals; third, that plaintiff did not perfect such appeal within the time provided by section 6943-c27, subsection 9a of the Code of 1935, by filing an appeal bond within 20 days as required by Code sections 11440 and 10588; and, fourth, failure to docket in time, or file transcript or petition to show complaint to the Board or action of the Board with reference thereto. This motion was overruled by the court on December 19, 1938, on which day the trial began.

Just prior to the beginning of the hearing before the district court, plaintiff filed transcript of the proceedings and order of the Board.

Defendants denied the grounds of the protest filed by the owner and claimed that the income from the property was sufficient to justify a higher valuation than that fixed by the assessor.

On trial the court entered decree reducing the assessment from $631,906 to $540,630, or a reduction of $91,276, from which decree both plaintiff and defendants appeal.

I. We may first consider the motion to dismiss appeal. The State Board of Assessment and Review, which is now called the State Tax Commission, at the time of these proceedings was invested with the power to investigate and pass upon individual assessments (Codes of 1935 and 1931, section 6943-c27, subsection 9a), and from its action appeal might be taken to the district court by any person aggrieved by the action of said board, within 20 days after such action was taken ''by serving on the chairman of the state board a written notice of appeal in the same manner as provided for the service of original notices.'' The Board, in the case of individual taxpayers, could correct errors, irregularities, or omissions, by raising, lowering, or abating an assessment found to be erroneous or excessive. From its ruling an appeal would lie to the district court. See Cedar Rapids Hotel Co. v. Stirm, 222 Iowa 206, 217, 268 N. W. 562, 567; In re Assessment against Lytle Inv. Co., 219 Iowa 1099, 260 N. W. 538; Smith v. Sioux City Stock Yards Co., 219 Iowa 1142, 260 N. W. 531. The latter two cases refer to omitted property but are assessments made by the treasurer. No bond on appeal is required by the statute above noted (section 6943-c27, subsection 9a), nor on appeal from the local board of review, where the requirements as to appeal are substantially the same as in appeals from the State Board. City of Marion v. Cedar Rapids & M. Ry. Co., 120 Iowa 259, 262, 94 N. W. 501, 502; Donlan v Cooke, 212 Iowa 771, 237 N. W. 496; Ingersoll v. The City of Des Moines, 46 Iowa 553. Neither is a transcript necessary to give jurisdiction, but only the notice of appeal. German Am. Sav. Bank of Burlington v. Council of City of Burlington, 118 Iowa 84, 91 N. W. 829; City of Marion v. Investment Co., 122 Iowa 629, 98 N. W. 488; Simons v. Mason City & Ft. D. Ry. Co., 128 Iowa 139, 103 N. W. 129; White v. City of Marion, 139 Iowa 479, 117 N. W. 254; Murrow, Treasurer, v. Heath, 146 Iowa 347, 125 N. W. 259; City of Marion v. Cedar Rapids & M. Ry. Co., supra. The case of Frost v. Board of Review, 114 Iowa 103, 86 N. W. 213, is referred to in the German Am. Sav. Bank case, 118 Iowa 84, 85, 91 N. W. 829, supra, and it is said:

"* * * there was an entire absence of anything, either in the nature of allegation or evidence, tending to show complaint or trial before the board of review; and on account thereof we held that there was nothing before the district court upon which it could act, and that the appeal was, therefore, properly dismissed."

It therefore seems that no bond is necessary, that the jurisdiction of the court is obtained by filing of notice of appeal, and from the holdings of the court an appeal such as we have here will not be dismissed unless, from the absence of transcript, petition, or evidence the court has nothing upon which it may act. We believe that the motion was properly overruled.

II. Defendants suggest that plaintiff in its appeal is limited to the grounds stated. Plaintiff's grounds of protest are inequitable valuation, a higher valuation than of other properties, and an excessive valuation, because of the income, because of the reproduction cost, and because of comparisons with other buildings. This, it seems, is sufficient to present the whole question under consideration. In re Assessment Farmers L. & T. Co., 155 Iowa 536, 136 N. W. 543.

III. This leaves for our consideration only the question of fact, whether or not the valuation placed upon the property by the assessor was correct. No contention is made as to actual value, as in Pierce v. Green, 229 Iowa 22, 294 N. W. 237, the question here raised and discussed being as to the alleged inequitable, comparative valuation. We have had other cases brought before us involving the 1933 assessment, in all of which the question of the proportionate valuation was considered. See Talbott v. City of Des Moines, 218 Iowa 1397, 1403, 257 N. W. 393, 396; Trustees of Flynn's Estate v. Board, 226 Iowa 1353, 1356, 286 N. W. 483, 484. Defendants claim that the assessor's valuation placed upon the Liberty Building is presumed to be just and equitable, and any corroboration of the assessor justifies the confirmation of the valuation. We may grant the first part of such contention. Such is the rule laid down in various rulings of this court, including the Talbott case above cited; Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 217 N. W. 837; and Chapman Bros. v. Board of Review, 209 Iowa 304, 228 N. W. 28. But

this is not a presumption of law but of fact and may be rebutted and overcome by evidence. Hawkeye Portland Cement Co. v. Board of Review, supra. The burden of proof rests upon the person complaining of the assessment, under the· provisions of Code section 7109.

But it would be going too far to say that *any* corroboration of the assessor's valuation would justify the confirmation of such valuation. Such corroboration must be weighed as any other evidence, and all the evidence must be considered, with due regard to the burden of proof placed by law upon plaintiff. Trustees of Flynn's Estate v. Board, supra.

█ The assessment in controversy, that of 1933, was based upon the application of certain formulae for the determination of values in the business district. In the Flynn case we discussed at length this system and its application, and it is unnecessary to repeat what we said in that opinion. The substance of our holding was, in effect, that valuations could not be determined by mathematical formulae alone, that there must also be taken into consideration all factors, including productive and earning capacity, and that judgment must be exercised in determining the influence of the various factors that enter into the assessment. All assessments at that time were based upon 60 percent of what was determined by the assessor to be the true value.

The Liberty Building is situated on the southwest corner of the intersection of Sixth and Grand Avenues. The land is owned by Earl Butler and held under lease by the plaintiff, which owns the building and is liable for the entire tax. The building, erected on the lots in 1923, is of ·12 stories, of plain steel and concrete construction. It has a frontage of 125· feet on Sixth Avenue and 132 feet on Grand Avenue, being the same area as the lots for the basement and first 2 stories, and above them there is an open area 66 by 66 feet, giving an L-shape to the upper stories. There are throughout terrazzo floors. There was evidence of some settling, resulting in cracks in walls and floors. At the time of the assessment the building was occupied by the plaintiff in its business, and other parts of the building were leased to tenants at a profitable rental. The

first floor was rented for mercantile store rooms and the other floors for offices.

Plaintiff occupies the ground under a 99-year lease, expiring in the ·year 2019, and paid a ground rent in 1933 of $30,000, and in the succeeding years $40,000 per year. The principal tenant in 1933 was the Bankers Life Insurance Company, whose lease was due to and did expire in 1939. The actual average net income for the building was about $80,000.

It is impossible to set out at length the evidence of the witnesses who testified as to value, or the reasons upon which their opinions were based. As usually happens, their estimates did not agree, and varied with the experience and qualifications of the witness, as well as the importance which he attached to some element or elements entering into the valuation. This is usual and does not imply that the witness is not trying to be fair. But comparative values of properties of this kind are extremely difficult to ascertain.

Considerable attention is paid in argument to productivity of the property. No one claims that this can be the sole guide, but it is an element to be considered, and so made by statute (Code section 7109), which provides:

"* * * In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; * * *."

"Actual value," "cash value," and "market value" are ordinarily considered as the same. Hawkeye Portland Cement Co. v. Board of Review, supra. It is earnestly contended by the defendants that the Bankers Life Insurance Company lease, which was to continue throughout the 4 years following 1933 and for 2 years thereafter, and, together with the other leases produced an average net rental of over $80,000, together with the ground rent paid by the Yeoman, should be considered as the prospective earning capacity, since these could and did extend over the 4 years for which the valuation was made; that if at the end of 4 years there was a change in the prospective earning capacity, that could and should be corrected in the next

assessment; that the next 4 years was as far as it was necessary for the assessor to look in determining productivity. Of course the present and past net income are fixed and should be considered, but we cannot agree with defendants' argument in its entirety, that probable future income need be considered only so far as it is likely to extend during the future 4 years. We think the prospective future income after that period should be given some consideration, because it is the actual value that must first be determined, and actual value depends to some extent upon what the property will produce—not merely within a limited period of years, but what its continuous earning capacity is likely to be. An assured rental income no doubt should increase the value, but the fact that that assured income will cease, and that there is doubt that the property can as profitably be rented in the future, and that in order so to rent it there must be substantial and expensive alterations in the property, must necessarily have the opposite effect. The longer the present lease had to run, the greater was its value as an element in determining the market value, but we cannot say that prospective earning capacity should be limited to 4 years.

Plaintiff's witnesses considered the normal rate, which of itself would not be a fair guide, but in their testimony stated that they considered what the building produced and what it had produced in the way of rental income.

Plaintiff urges that in this valuation it is entitled to the full 20 percent reduction from the 1931 assessed value of $680,-200· (which included the 5-percent reduction under the Elliott law, Special Acts Forty-fourth General Assembly, chapter 244), as was allowed in the Flynn case. The Elliott law was applied in Polk county not by a reduction in rates but by a reduction in value. We do not think there can be a fair comparison. Taking into consideration as one element only the productivity, there is little similarity. In addition, there are the ages of the two properties, the different types of construction, and the nature of improvements. That we find under the evidence that one building is entitled to the full discount recommended by the State Board does not mean that we should find under other evidence that another property entirely different would be entitled to the same discount. The Board in its recommendations to asses-

sors correctly pointed out that this did not mean that all assessments should be reduced.

Plaintiff complains of the amount allowed by the assessor for depreciation, which was an initial allowance of 4 percent, and an annual allowance of 1 percent, and offered testimony that such allowance should be increased. An examination of the order entered by the trial court on the day before the decree was entered would indicate that the court in its final valuation as shown by the decree was inclined to plaintiff's view and did make an increased reduction on that ground.

We think the testimony in the case, including that of plaintiff's witnesses, indicates that the valuation placed upon the property by the assessor was not in proportion to that placed on other like property. We are inclined to the opinion that the court, in view of all the evidence, and taking into consideration the manner in which all the valuations of like business properties were made in 1933, has computed correctly the valuation which should be given to the real estate in question. The various items on which plaintiff claimed reduction are covered by the substantial reduction made by the court. No valuation can, of course, be correct to the dollar; at best it is approximately correct. But the law contemplates a valuation which, compared with other properties, shall be equitable and just. Our view is that the finding and decree of the court determines such a valuation and should be approved. We therefore hold that the decree of the court should be, and it is, affirmed on both appeals.—Affirmed on both appeals.

RICHARDS, C. J., and SAGER, OLIVER, STIGER, and BLISS, JJ., concur.