COWLES COMMUNICATIONS,
INC., Appellee,

v.

BOARD OF REVIEW OF POLK
COUNTY, Iowa, Appellant.

No. 59900.

Supreme Court of Iowa.

May 17, 1978.

Rehearing Denied June 23, 1978.

Ray A. Fenton, County Atty., J. R. McManus, Special Counsel, Des Moines, for appellant.

Roger L. Ferris, of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

The Board of Review of Polk County (Board) appeals from the decree of the Polk District Court ordering removal from the real estate tax roll of the television tower, antenna and other transmission equipment of station KCCI owned by plaintiff Cowles Communications, Inc., because the court found such property to be personal property under section 427A.1(3), The Code, 1975.

April 8, 1975, the Polk County Assessor mailed Cowles its real estate assessment roll for the period July 1, 1975, to June 30, 1976. This document informed Cowles the assessor considered all its land, building and transmission equipment at its 9th and Pleasant streets address as real property. The total value of Cowles' property at that address was listed as $1,135,790 of which $685,382 was the value of the tower, antenna and transmission lines, $226,263 was the value of the transmitter equipment, $45,345 was the value of other miscellaneous equipment, $151,300 was the value of the building, and $27,500 was the value of the land on which were located the building and other property.

This document also contained a notice to taxpayers that if they were not satisfied the assessment was correct, they could protest to the Board between April 16 and May 5. Attached to Cowles' petition for review in the district court was a copy of a protest filed by it May 5. It is stated therein that the property consisting of the tower, antenna, transmission lines, transmitter and miscellaneous equipment was not assessable because it constituted personal property. Also attached to the petition was a copy of an amended protest whereby Cowles sought to correct errors made in the original assessment roll. Cowles contends this was filed May 30. The Board denies it was filed.

July 1 Cowles filed an application to prescribe the method of service of notice of appeal. In this application Cowles stated it could not serve notice of appeal from the Board's action because the Board's chairman, Walter Potts, Jr., was then in Alaska and would not return within the 20 days within which appeals from such action must be taken pursuant to section 441.38, The Code, 1975. Cowles pointed out Charles Colby, Jr., was vice chairman of the Board and had served as presiding officer at its protest. Cowles asked the court to prescribe an alternative method of service pursuant to rule 56.1(n), Rules of Civil Procedure.

The court filed its order stating Cowles could serve Colby with notice of appeal.

Contained in the record is a copy of a return of service made upon Colby. This return contains the statement the sheriff received the original notice July 10 and it was served July 11.

July 10, Cowles filed a petition in equity seeking review of the Board's action. The allegations of this petition will be discussed in conjunction with the Board's answer.

November 6, the Board filed a special appearance contending the court lacked jurisdiction because proper written, timely notice of appeal had not been served on the chairman or presiding officer of the Board as required by section 441.38 and the order of the court. In its resistance to the special appearance, Cowles pointed out the return of service had been misfiled. The court overruled the special appearance once the return of service was properly filed.

January 15, 1976, Cowles filed a motion for default judgment contending the Board had failed to appear or answer within seven days of the overruling of its special appearance. Four days later the Board filed an answer generally denying each allegation of Cowles' petition. The court then overruled Cowles' motion.

February 9, the Board filed an amended and substituted answer. In paragraph one of this answer it admitted Cowles' allegation it was appealing from the action of the Board. It admitted in paragraph four Cowles had protested the assessment roll to the Board. The seventh paragraph contained an admission it had sustained Cowles' protest as to some miscellaneous equipment and had denied its protest with respect to the tower, antenna, transmission lines and remaining equipment.

In paragraph twelve the Board denied Cowles' twelfth paragraph. It also denied the court had jurisdiction of the appeal or of the subject matter of the appeal because no proper notice of appeal had been served on the chairman or presiding officer of the Board in the manner prescribed in section 441.38 or in accord with the Iowa Rules of Civil Procedure. At trial of this matter the Board made a motion to dismiss the appeal at the close of Cowles' evidence and renewed the motion at the close of all the evidence. Both motions were overruled.

The court issued its findings of fact and conclusions of law on September 1, 1976, and entered its decree on September 22.

From our review of the record it is our view the facts giving rise to this appeal are well narrated in the court's decree. In an effort to afford the reader a better understanding of the problems presented we set out the pertinent parts thereof:

"\* \* \*

"The television tower is 1880 feet high and consists of steel components bolted to one another. The components are bolted together into thirty foot sections and these sections are in turn bolted together to form the tower. No fastening devices are used other than nuts and bolts. The tower is bolted to a concrete foundation, and is not attached to the foundation except by nuts and bolts. Three ground wires are welded to each of the tower's three legs and run into the ground where they are attached to steel rods. The ground wires are not attached to the concrete foundation. The tower is supported by 27 guy lines running from the tower to nine concrete anchors. The three guy lines running to each anchor are attached by three 'U' bolts. No fastening devices except the 'U' bolts are used. The tower, including guy lines, is constructed in a way that it can be removed without modification or alteration of the tower, the foundation, or the anchors. The tower will support an antenna having weight and wind load characteristics equal to or less than the antenna presently placed upon it. If disassembled it could be reassembled as either one tower or as a number of smaller towers. It could be used for purposes other than a television tower. It could be re-erected any place west of the Mississippi or south of the junction of the Mississippi and Ohio Rivers, less approximately ten percent of the foregoing area. It can be broken down entirely or shipped in thirty foot sections by rail or truck.

"The antenna is bolted to the top of the tower; it is not affixed to the tower except by nuts and bolts. It is 118 feet high including the beacon. The antenna can be used by any channel 8 television station, of which there are approximately 52 in the United States. It is constructed in a manner that it may be removed from the tower without altering or modifying the antenna, tower or transmission lines.

"The transmission lines run from the antenna to the transmitter. Its twenty foot sections and shorter elbows plus together and are secured by nuts and bolts. The transmission line is attached to the tower by clamps which are bolted to the tower. The transmission line is not connected together nor to any other equipment other than by nuts, bolts, and clamps. It is removable without alteration or modification of the transmission line or any equipment to which it is attached. The transmission line could be used by eighty percent of the 971 UHF and VHF stations in the United States.

"The transmitter is located in a building at the plaintiff's Alleman site. Its principal parts are the main transmitter cabinet, two power supply cabinets, an optoswitcher and filterplexer. All of these parts are interconnected. The transmitter is connected to a power supply, transmission line, and exhaust system. Some parts of the transmitter are bolted to the floor. All connecting devices attaching the transmitter to the building or to its own component parts previously listed are of a nature that they can be removed without modification or alteration of the building, other equipment, connecting devices or the transmitter. The transmitter may be removed from the building without alteration to the building or to the transmitter. It can be transported on a truck. The plaintiff's transmitter can be used by any Channel 7 through 13 television station, of which there are approximately 250 in the United States.

"The transmitter related equipment is primarily located in six equipment racks in plaintiff's building. The various individual items are attached to each other and to the rack by screws and electrical or signal connections. All of this equipment is removable without alteration or modification to the equipment itself or to the other equipment or building to which it is attached.

"All of the items listed in Plaintiff's Exhibit 1 are constructed and installed in a manner to make them movable, and are movable. There is a market for all of the items as used equipment. Other television stations have moved such equipment, have sold such equipment and have purchased such equipment. Vendors repossess such equipment, and take some of the equipment as trade-ins on new equipment. Transmitters are placed in operation at the factory and tested prior to shipping. Television stations, when changing their location, have moved such equipment to their new locations. They have also removed such equipment from their old locations without moving it to a new location.

"With specific regard to towers, when a television station moves it would be less expensive to move a tower of the kind owned by KCCI than to erect a new one. The original cost of the tower was $644,737 in 1974. Of this amount only $119,500 related to the cost of erection, including erection of the antenna and transmission lines as well as the tower itself. An additional $19,310 in winter weather construction costs also related to erection of this tower. Towers which are no longer in use are not ordinarily left standing. When standing they cause the owner to incur expenses for maintenance, lighting, taxes and insurance. They present a liability hazard. In addition, governmental practices and/or regulations encourage removal of towers no longer in use, and sometimes require their removal. Television stations can make arrangements to stay on the air while moving their tower. In this locality WHO's Alleman tower could handle a Channel 8 antenna on a temporary basis. WHO's Mitchellville tower can also handle such an antenna temporarily. Television antennae can be placed on a tall building temporarily. Tele-

vision stations sometimes have back-up towers and antennae, as does the plaintiff.

"All of the property listed on Plaintiff's Exhibit 1 is a kind of property which would ordinarily be moved to the owner's new location when the owner of the property moves to a new location. Television stations do change locations. (In making the foregoing findings the Court has given great weight to the movability of the property and also to the economic advantage of moving the property rather than purchasing new property.) Irrespective of whether plaintiff's property is of a kind which would be moved to the owner's new location, all of the property listed on Plaintiff's Exhibit 1 is a kind of property which would be removed when the owner of the property moves to a new location.

"The new cost of the property listed in Plaintiff's Exhibit 1 is as listed in the exhibit. The best evidence in the record of the new cost of the anchors and tower foundation is $120,000, and such is found to have been the new cost. The assessor has valued the tower, including base and anchors, at $501,030; the antenna and transmission lines at $142,160; the transmitter and related equipment at $240,410.

"In making the foregoing findings of fact the Court, as directed by Section 427A.1 Code of Iowa (1975), has given no weight whatsoever to the intentions of the plaintiff with respect to moving its property in the event it should change its location."

In its conclusions of law the court stated:

"The Court concludes as a matter of law that this Court has jurisdiction of the parties and subject matter herein, and that all of Plaintiff's property listed on Plaintiff's Exhibit 1 is personal property. The Court further concludes that the plaintiff is entitled to have said property reclassified by the assessor of Polk County as personal property and to have its real property assessment reduced by the following amounts:

| | |
|---|---|
| Tower | $422,368 |
| Antenna and Transmission Lines | $142,160 |
| Transmitter and related equipment | $240,410 |
| TOTAL: | $804,938 |

"The reduction for the tower is calculated by pro-rating the valuation by the assessor of the tower, including base and anchors ($501,030), in proportion to the new cost of the base and anchors ($120,000), which are admitted to be real property, and the new cost of the remaining portion of the tower ($644,737).

"The plaintiff's attorney is directed to prepare a decree in accordance with these findings of fact and conclusions of law, said decree to be approved as to form by defendant's attorney. Costs shall be taxed to the defendant."

Thus, Cowles' 1975 real property assessment was reduced from $1,039,100 to $234,162 and its 1975 personal property assessment correspondingly increased.

The following issues are presented for review:

1. Did the trial court have jurisdiction of this appeal?

2. Is a television tower, antenna, transmission lines, transmitter and other transmitting equipment personal property under chapter 427A, The Code, 1975?

I. The Board contends the court below did not have jurisdiction because Cowles did not affirmatively prove jurisdiction as required by section 441.38, The Code, 1975. It maintains Cowles failed in the following respects:

"(1) The taxpayer failed to produce or cause to be produced and introduced into evidence the protest which it claimed to have filed with the Polk County Board of Review while it was in regular session;

"(2) It failed to prove the action taken on this protest by the Board of Review;

"(3) It failed to prove when the Board of Review had adjourned, sine die;

"(4) It failed to identify and prove who was the chairman or presiding offi-

cer of the Polk County Board of Review;

"(5) It omitted to prove that it perfected an appeal to the Polk County District Court within 20 days after the Board of Review had adjourned; and

"(6) It failed to prove that it had served a timely and proper notice of appeal to the District Court upon the chairman or presiding officer of the Board of Review."

Section 441.38 provides as follows:

"Appeals may be taken from the action of the board of review with reference to protests of assessment, to the district court of the county in which such board holds its sessions within twenty days after its adjournment. No new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded, but additional evidence to sustain said grounds may be introduced. The assessor shall have the same right to appeal and in the same manner as an individual taxpayer, public body or other public officer as provided in section 441.42. Appeals shall be taken by a written notice to that effect to the chairman or presiding officer of the board of review and served as an original notice."

■ In an appeal under this section compliance with its requirements is jurisdictional and we will search the record to determine if there is evidence to support a finding of jurisdiction. *Grundon Holding v. Bd. of Review of Polk Cty.*, 237 N.W.2d 755, 757 (Iowa 1976). Although it was not specifically stated in *Stampfer Bldg. Co. v. Board of Review of Dubuque*, 195 N.W.2d 390, 393–394 (Iowa 1972), it is clear from that case only substantial compliance with the requirements of section 441.38 is necessary to confer jurisdiction upon the district court.

■ In order to find the trial court had jurisdiction we must find evidence of the following: (a) a protest filed by the taxpayer; (b) acted upon by the Board; (c) appealed to the district court within 20 days of the Board's adjournment; (d) with written notice of the appeal; (e) served as an original notice; (f) upon the chairman or presiding officer of the Board. We must also find, as the Board urges, evidence of the grounds upon which the protest was made because the trial court was proscribed from admitting any evidence which did not go to sustain the grounds alleged in the protest.

Cowles had alleged in the first sentence of paragraph four of its petition that it had filed a property tax protest with the Board of Review of Polk County. The filed-stamped protest was attached to taxpayer's petition in the district court. In its amended and substituted answer the Board admitted Cowles filed a property tax protest with it on May 5, 1975.

The Board contends under this state of the record the protest had to be introduced into evidence. In other words, the Board contends that in light of Cowles' failure to offer extrinsic evidence of such admitted fact the trial court was without power, authority or jurisdiction to grant Cowles as a taxpayer any relief. We do not agree.

■ As pointed out, the trial court concluded as a matter of law that it had jurisdiction of the subject matter. Where the facts on which the court's ruling is based are either expressly admitted or not denied, there is no necessity to present any evidence in support of such facts as there is no issue as to such facts. No proof is required. *Mason & Hanger, etc. Co. v. State Tax Comm.*, 258 Iowa 531, 542, 139 N.W.2d 437, 443; *In re Estate of Stonebrook*, 258 Iowa 1062, 1073, 141 N.W.2d 531, 537; *Hanson v. Lassek*, 261 Iowa 707, 709–711, 154 N.W.2d 871, 873.

■ Action on the protest by the Board was alleged by Cowles in paragraphs one and seven of its petition. This action was admitted by the Board in its amended and substituted answer. No further proof was required as to this item.

From our de novo review we find sufficient evidence to support a finding Cowles took its appeal within 20 days of the Board's adjournment. In its petition

Cowles alleged it had filed an amended protest with the Board May 30. This was denied by the Board in its answer. The copy of this protest referred to in and attached to Cowles' petition contains a protest that the Cowles' land consisted of only 1.8 acres instead of the 5 acres listed in the assessment and a protest that some of the equipment listed as being located at the 9th and Pleasant address was actually located at its downtown Des Moines address.

In its petition Cowles alleged these two errors were corrected by the Board. In its answer the Board admitted these allegations were true. It thus appears the Board was still in session as of May 30.

In its application to prescribe method of service of notice of appeal Cowles alleged the Board had adjourned June 12, 1975. The record discloses no resistance was made as to this allegation when the court issued its order.

The Board does not contend it did not adjourn on June 12, but rather insists Cowles did not establish the date the Board adjourned. There is no merit in this contention. The court concludes the Board adjourned June 12 and Cowles' appeal was taken within 20 days thereof.

The fact there was a written notice of appeal was established by Cowles' reference to it and attachment of it to its petition.

The fact the notice was served as an original notice was established by the record. July 1, the nineteenth day after the Board had adjourned, Cowles filed its application to prescribe method of service of notice of appeal. In this application Cowles asked the court to provide an alternative method of service under rule 56.1(n), R.C.P. This rule provided:

"If service cannot be made by any of the methods provided by this rule, any defendant may be served as provided by court order, consistent with due process of law."

Rule 56.1(n) and other rules pertaining to the filing of an original notice were specifically made applicable to section 441.38 by its own terms. The Board does not contend the method of service was in violation of its right to due process. The action of the court ordering alternative method of service of notice of appeal was proper under the facts of this case.

The fact the notice of appeal was served is established by a proof of service contained in the record. "We have stated repeatedly that the officer's return is presumed to be regular and valid. The burden is on him who challenges the return to prove that it is false." *Ruth & Clark, Inc. v. Emery*, 233 Iowa 1234, 1242, 11 N.W.2d 397, 402. Here the Board did not challenge the proof of service and it is, therefore, presumed valid. The fact the return is valid is sufficient proof of actual service. *Gray v. Lukowski*, 241 N.W.2d 35, 39 (Iowa 1976).

There was evidence before the court from which it could find the notice of appeal was served on a presiding officer of the Board. Cowles alleged in its application to prescribe method of service that Charles Colby, Jr., was the presiding officer at the hearing on its protest. This was not contested by the Board and the court correctly designated him as the person to be served pursuant to section 441.38.

The grounds which were urged in protest before the Board were made a part of the record by attachment to Cowles' petition. Cowles also set out the grounds in its petition and this allegation was admitted by the Board in its answer.

From our review of the record we find the Board's contention the court was without jurisdiction upon the six grounds urged is without merit.

The Board further contends the court did not have jurisdiction because it did not have before it a transcript of the proceedings before the Board. It maintains the following cases support this contention: *Frost v. Board of Review*, 114 Iowa 103, 86 N.W. 213; *City of Marion v. Investment Co.*, 122 Iowa 629, 98 N.W. 488; and *Peterson v. Board of Review*, 138 Iowa 717, 116 N.W. 818.

Cowles contends the foregoing cases are not representative of the true state of the

law. In support of this contention it cites: *German American Sav. Bank of Burlington v. Council of City of Burlington,* 118 Iowa 84, 85, 91 N.W. 829, 830; *White v. City of Marion,* 139 Iowa 479, 482, 117 N.W. 254, 255; *Yeoman Ins. Co. v. Board,* 229 Iowa 320, 324, 294 N.W. 330, 332–333; *Corn Belt Theatre Corp. v. Board,* 234 Iowa 355, 358, 12 N.W.2d 820, 821–822; and *Aerie 1287, Frat. Order of Eagles v. Holland,* 226 N.W.2d 22, 24 (Iowa 1975).

In *German American Sav. Bank v. Council of Burlington* the court set forth the facts, explained *Frost v. Board of Review,* and stated its holding:

"No transcript of the proceedings of the board of review was filed in the district court, nor was there any pleading filed. The notice of appeal which had been served upon the defendants was filed, but there is nothing therein tending to show that any issue was in fact tried by the board. Notwithstanding this condition of affairs, the district court had jurisdiction to hear the appeal. The notice of appeal gave the necessary jurisdiction. *Bremer Co. Bank v. Bremer County,* 42 Iowa 394. Whether or not, after acquiring jurisdiction, the court had evidence enough before it upon which to act intelligently, may be determined from the proceedings themselves, and we think the record clearly shows sufficient facts to authorize the court to enter judgment. In *Frost v. Board,* 114 Iowa 103, 86 N.W. 213 there was an entire absence of anything, either in the nature of allegation or evidence, tending to show complaint or trial before the board of review; and on account thereof we held that there was nothing before the district court upon which it could act, and that the appeal was, therefore, properly dismissed. No question of jurisdiction was raised in that case, and none was determined."

In *White* the board of review contended the district court was without jurisdiction because no transcript of the proceedings before the board had been filed in the district court. In deciding this issue the court stated:

"* * * Now, whilst we have held in *Frost v. Board,* 114 Iowa 103, 86 N.W. 213 that something more than mere service of notice of appeal is necessary to give the district court jurisdiction, we did not hold that in every case a transcript of the proceedings before the board is required to be filed, in order to give the district court jurisdiction. In fact, it is expressly intimated that the necessary jurisdictional facts may be presented by petition, * * *. All that is required is that the complaint before the board, its decision thereon, and the appeal be shown, in order that the court before whom the case is to be tried may know what is in issue, and that there is some decision to be reviewed. This is all that is held in *Frost's* case, * * *."

In *Yeoman* this court had before it an appeal from the State Board of Assessment and Review. In its discussion whether a bond needed to be filed before the appeal, the court noted the similarity between appeal from the State Board of Assessment and appeal from a local board of review and stated:

"It therefore seems that no bond is necessary, that the jurisdiction of the court is obtained by filing of notice of appeal, and from the holdings of the court an appeal such as we have here will not be dismissed unless, from the absence of *transcript, petition, or evidence* the court has nothing upon which it may act. * * *." (Emphasis supplied).

In *Corn Belt* the plaintiff appealed by giving the statutory notice and filing a petition in equity setting out the grounds for its appeal. Defendant did not question the jurisdiction of the court until appeal. In answer to defendant's challenge the court cited with approval the previously set out quotation from the *Yeoman* case and concluded the district court had the right to entertain the appeal.

In *Aerie,* this court answered the jurisdictional question as follows:

"Appellees argue even this issue [that plaintiff's property was illegally assessed in 1971] is not before us as the Aerie did not file in district court a transcript of the

proceedings before the Board of Review and thus deprived that court of jurisdiction. This court rejected an identical contention in *Corn Belt Theatre Corp. v. Board of Review, etc.,* 234 Iowa 355, 12 N.W.2d 820 (1944) by holding *jurisdiction was obtained not by filing a transcript but by filing a notice of appeal.* Such notice was filed in this case and trial court therefore had jurisdiction." (Emphasis supplied).

It is clear from the cases cited by the parties and from others we have studied, the trial court acquires jurisdiction upon the filing of the notice of appeal. The filing is sufficient for it to entertain an inquiry into the matter. It is not, however, enough by itself to permit the court to enter a decree. The court must have before it a transcript of the proceedings, or a petition setting out the grounds of protest and the action taken on it, or sufficient evidence of the protest and the action taken on it or it may not issue a decree. This court has made clear a district court needs either the transcript, petition or evidence so that it will have before it an adjudicable issue.

Here Cowles had filed a notice of appeal; therefore the court had jurisdiction. The court had before it a petition setting out the grounds of the protest and the action taken by the Board on it. In addition Cowles presented evidence of the protest and the action. Thus, the court had an adjudicable issue before it. The court had the power to entertain this appeal and to issue a decree. The Board's contentions to the contrary are without merit.

It is to be noted this is an adversary proceeding and the record does not present a situation where the parties are attempting to confer jurisdiction of the subject matter upon the court by either waiver, estoppel or consent. In this connection see *Lloyd v. State,* 251 N.W.2d 551, 556–558 (Iowa 1977).

The Board makes several other contentions which are not set out but which have been considered and, in light of our holding herein, are without merit.

II. As stated, our review of this matter is de novo. *Milroy v. Board of Review of County of Benton,* 226 N.W.2d 814, 816 (Iowa 1975). Here we are faced not with the issue of interpretation of a statute but rather with a determination of whether under the facts of this case Cowles' property is such that it qualifies for the personal property tax credit under section 427A.1(3).

III. The issue before us is whether Cowles' television tower, antenna, transmission lines and other transmitting equipment are real property as the Board contends or personal property as Cowles contends. Resolution of this issue requires reference to section 427A.1, The Code, 1975, which in pertinent part provides:

"1. All tangible property except that which is assessed and taxed as real property is subject to the personal property tax credits provided in this chapter, unless the property is taxed, licensed, or exempt from taxation under other provisions of law. For the purposes of property taxation only, the following shall be assessed and taxed, unless otherwise qualified for exemption, as real property:

"* * *

"c. Buildings, structures or improvements, any of which are constructed on or in the land, attached to the land, placed for use upon the land, or placed upon a foundation whether or not attached to the foundation. * * *

"d. Buildings, structures, equipment, machinery or improvements, any of which are attached to the buildings, structures, or improvements defined in paragraph 'c' of this subsection.

"* * *

"2. As used in subsection 1, 'attached' means any of the following:

"a. Connected by an adhesive preparation.

"b. Connected in a manner so that disconnection requires the removal of one or more fastening devices, other than electric plugs.

"c. Connected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed.

"3. Notwithstanding the definition of 'attached' in subsection 2, property is neither 'attached' nor 'placed for use upon that land' if it is a kind of property which would *ordinarily be removed when the owner of the property moves to another location.* In making this determination the assessing authority shall not take into account the intent of the particular owner." (Emphasis supplied).

The Board apparently contends Cowles' property is of the kind which would not ordinarily be removed when the owner of such property moves to another location. We say apparently because the Board concerned itself at trial and in written argument before this court with an attempt to prove an entirely different matter.

At trial the Board attempted to prove Cowles' separate pieces of television transmission equipment were attuned to each other and made up one unit. It proved assessors had previously assessed property such as that at issue here as real property.

On appeal the Board cites numerous cases which we have examined. The majority of these cases fall into one or both of two categories. One group concerns determinations by courts that property is or is not a fixture. The second group stands for the proposition that for taxation purposes real property is to be assessed as a unit rather than as the sum total of its component parts.

Assuming arguendo these cases stand for the propositions urged, we find them inapplicable to the issue before the court. Cowles does not dispute the fact the property at issue would be real property were it not for section 427A.1(3). We agree the property should be considered as a unit but the question still remains whether it is to be treated as a unit of personal property or with the buildings, land and foundations as a unit of real property. If it is a unit of personal property it cannot be treated as a part of the unit of real property because

section 427A.1 clearly provides for different treatment for each type of property.

The Board argues no witness testified to or indicated he knew of any time when a broadcasting station in Iowa was moved by its owner and placed in operation again at a different location in Iowa. It appears to argue Cowles needed to prove this fact. This is not what section 427A.1(3) requires. It requires the property to be ordinarily removed when the owner moves to another location. It does not require him to take it with him or to erect it at his new location.

Cowles introduced testimony to the effect owners of property such as that at issue here almost always removed such property when they moved to another location. Dirk Freeman testified he knew of no instance in which a television tower which was no longer being used by its owner was not removed.

Furman Anderson, through deposition admitted at trial, testified it was common practice in the television industry to move or take down television towers when they were no longer desired at their original locations and he added it is not common practice to abandon the tower or scrap it. He noted the F.C.C. does not allow owners to abandon towers when they are no longer in use.

Robert Engelhardt testified it was an infrequent occurrence for an owner to leave unused towers and transmitters remaining on his property when he moves.

Cowles introduced testimony it would be economically advantageous for a television tower owner to move this type of property rather than to buy new equipment for the new location. It proved the installation cost of its $644,737 tower and antenna was $119,500. Testimony was also adduced there were risk of injury considerations which would make it advantageous for an owner to remove his equipment upon changing locations.

Cowles established there was a market for used television transmission equipment including towers. It introduced into evidence catalogs containing advertisements

attempting to sell used towers and transmission equipment.

The only possible flaw in Cowles' evidence was its failure to produce any evidence to prove a 2000 foot tower-antenna combination had ever been removed. It did, however, produce testimony the dismantling of such a tower could be accomplished by the reversal of the processes used to assemble the tower. It also established the fact towers are built to be movable.

The Board did not refute this testimony at trial but instead presented testimony of several assessors that they considered transmission towers and equipment to be real property. The fact this equipment has previously been considered real property does not aid the Board. Section 427A.1(3) went into effect in 1975 and previous assessments do not now apply.

We call attention to the fact that section 427A.1(3) was amended subsequent to this action by the 1977 Session, Sixty-seventh General Assembly, chapter 43, section 14.

From our de novo review we conclude the property at issue here is of the kind which is ordinarily removed when the owner of the property moves to another location. Hence, it was personal property and therefore Cowles is entitled to have said property reclassified by the assessor of Polk County as personal property and to have its real property assessment reduced as stated by the trial court in its decree in this matter. Its personal property assessment is to be correspondingly increased.

The decree of the trial court is—Affirmed.