**ROSE ACRE FARMS, INC., Appellant,**

v.

**The BOARD OF REVIEW OF MADISON COUNTY,**
Appellee.

No. 90–1068.

Supreme Court of Iowa.

Dec. 24, 1991.

Jerrold B. Oliver and G. Stephen Walters of Jordan, Oliver & Walters, Winterset, for appellant.

Charles D. Hunter and Margaret C. Callahan of Belin, Harris, Helmick, Lamson & McCormick, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

The sole issue in this tax assessment appeal is whether the district court correctly determined that certain items of an egg producing facility were subject to tax assessment. We reverse and remand with directions.

Rose Acre Farms, Inc. is an Indiana corporation that owns seven integrated, state-of-the-art egg production facilities. Two are located in Iowa. The one at issue is in Winterset.

The Winterset facility was built in 1987 at a cost of about eleven million dollars. The facility consists of (1) twelve layer houses, (2) four pullet houses, (3) a feed mill that services the pullet and layer houses, and (4) an egg processing unit that packages eggs for shipment. Each layer house has about 125,000 layer hens, and each pullet house has about 130,000 growing pullets (young hens).

The Winterset facility buys baby chicks that are then raised in one of the four pullet houses. When fully grown the birds are transferred into the twelve layer houses. In the layer houses, eggs are collected, processed and packaged for shipment.

In January 1988 and 1989, the Madison County assessor assessed the layer and pullet houses. The assessor included in the assessment certain items in these buildings. The property tax dispute centers around these included items.

The disputed items in the layer houses consist of (1) the cages, including cage stands and cage floor grids; (2) the feeding and watering system; and (3) the egg collection system that transports the eggs from the cages to the cross collection belt and egg grading machine.

The disputed items in and around the pullet houses include (1) the cages, (2) the feeding and watering system, (3) the manure removal system, and (4) the bulk bins.

The twelve layer houses and the four pullet houses were constructed independently of the disputed items located in and around them. These buildings are pole barns with clear span truss support. This type of construction eliminates the need for support in the center of the buildings. The buildings have limestone floors.

Each building has an elevated superstructure about eight feet above the limestone floor. A metal A-frame sits on the superstructure. Mounted to the A-frame are the cages, feeding system, watering system, manure removal system in the pullet houses, and egg collection system in the layer houses. All of the equipment is electrically powered.

The feeding system is hung from the ceiling by chains. The bulk bins are a part of the feeding system and are located outside of the buildings. The bulk bins are bolted to a concrete base with lag bolts. Attached to the bulk bins is a flex tube that distributes the feed into the layer and pullet houses.

Each A-frame is supported by legs that slide into a foot base. The foot base is lag screwed or nailed to, and supported by, the superstructure. A manure pit occupies the space beneath the superstructure. The manure is mechanically removed from that area.

The A-frame is bolted or nailed to the superstructure at each end to give stability to the entire unit. The watering system is tied together with slip connectors and is attached to a central water source.

The whole system is integrated and highly automated. The feed and water are delivered automatically, and the eggs are gathered the same way. Besides the twelve layer houses and four pullet houses, there is a complete modern feed mill with storage.

The disputed items were brought in and put together much like an erector set. These items can be removed by reversing the installation process, again using the erector set analogy.

The superstructure supporting the items and forming the manure pit can be removed without adversely affecting the building structure.

In the foregoing description we have borrowed extensively from the district court's fact findings.

After the property was assessed for 1988 and 1989, Rose Acre filed a protest with the board of review. Rose Acre protested the values that had been set and the inclusion of the disputed items. *See* Iowa Code § 441.37 (1987).

The board denied the protest.

Rose Acre appealed to the district court. *See* Iowa Code §§ 441.38, 17A.19. There the parties agreed as to value, leaving for the district court one issue: whether the disputed items were taxable under Iowa Code chapter 427A. The district court held that these items were taxable, which prompted Rose Acre to appeal to this court.

Tax assessment appeals are equity proceedings. *See* Iowa Code § 441.39. So our review is de novo. *See* Iowa R.App. P. 4. In our de novo review we give weight to the district court's findings of fact, especially when considering the credibility of witnesses. However, we are not bound by those findings. Iowa R.App. P. 14(f)(7).

■ I. Beginning July 1, 1987, all taxes on property described as personal property under Iowa Code section 427A.1 were repealed. *See* Iowa Code § 427A.10 (1991) ("Effective on July 1, 1987, all taxes on personal property as defined in section 427A.1 are repealed. For assessment years beginning on or after January 1, 1986 personal property shall not be listed or assessed. This section shall prevail over all inconsistent statutes."). So it becomes critical whether the disputed items included within the assessments are personal property under Iowa Code section 427A.1.

The 1987 version of that statute pertinently provides:

1. All tangible property except that which is assessed and taxed as real property is subject to the personal property tax credits provided in this chapter, ... *For the purposes of property taxation only, the following shall be assessed and taxed,* unless otherwise qualified for exemption, *as real property:*

....

c. Buildings, *structures or improvements,* any of which are constructed on or in the land, attached to the land, or *placed upon a foundation whether or not attached to the foundation....*

d. Buildings, structures, *equipment, machinery* or improvements, *any of which are attached to the buildings,* structures, or improvements *defined in paragraph "c"* of this subsection.

....

2. *As used in subsection 1, "attached" means any of the following:*

....

b. *Connected in a manner so that disconnecting requires the removal of one or more fastening devices, other than electric plugs.*

c. *Connected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed.*

3. *Notwithstanding the definition of "attached" in subsection 2, property is not "attached" if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location. In making this determination the assessing authority shall not take into account the intent of the particular owner.*

....

Iowa Code § 427A.1 (1987) (emphasis added) (quoted language remains unchanged in Iowa Code sections 427A.1 (1989) and 427A.1 (1991)).

Rose Acre believes the disputed items are not "buildings, structures or improvements" as defined in section 427A.1(1)(c), but concedes they are "equipment" and "machinery" as defined in section 427A.1(1)(d). Rose Acre also concedes that the disputed items are "attached" within the meaning of Iowa Code section 427A.1(2)(b) and (c).

Nevertheless, Rose Acre believes the disputed items come within the exception we have above italicized in Iowa Code section 427A.1(3): "Notwithstanding the definition of 'attached' in subsection 2, property is

not 'attached' if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location." If the exception does apply, the disputed items are not attached for purposes of section 427A.1(1)(d). In that event, the disputed items would not be taxed as real property because "attachment" is a necessary factor for taxability of equipment and machinery under section 427A.1(1)(d).

II. The board seeks to uphold the district court's decision on alternative grounds. The board thinks the disputed items are "structures or improvements ... placed upon a foundation whether or not attached to the foundation." Iowa Code § 427A.1(1)(c). Or, the board urges, the disputed items are not the "kind of property which would ordinarily be removed when the owner of the property moves to another location." Iowa Code § 427A.1(3). Regarding the first alternative, questions whether the disputed items "would ordinarily be removed" are irrelevant on the question of taxation under section 427A.1(1)(c). Simply put, the exception in section 427A.1(3) does not apply to property described in section 427A.1(1)(c) because attachment is not a necessary requirement for taxation under section 427A.1(1)(c).

Upon our de novo review, we conclude that the disputed items are more clearly "equipment" or "machinery" mentioned in section 427A.1(1)(d) rather than "structures or improvements" mentioned in section 427A.1(1)(c). We think the disputed items would commonly be understood to be equipment or machinery. Any doubt on interpretation, of course, must be resolved in favor of the taxpayer. *See Iowa Dep't of Transp. v. General Elec. Credit Corp.,* 448 N.W.2d 335, 341 (Iowa 1989). That leaves for our consideration the second alternative.

III. In the district court, Rose Acre presented much testimony to show that the disputed items are the kind of property an owner would ordinarily remove when moving to another location. And on appeal, Rose Acre relies heavily on *Cowles Communications, Inc. v. Board of Re-*

*view,* 266 N.W.2d 626 (Iowa 1978) to support its position regarding the exception in section 427A.1(3).

In *Cowles* this court was dealing with Iowa Code section 427A.1 (1975). Except for some changes not relevant here, that statute has remained unchanged. The issue in *Cowles* was whether a television tower, antenna, transmission lines, and other transmitting equipment were personal property under section 427A.1 and therefore not taxable as real property. As here, the issue turned on whether the property in question was the kind of property that would ordinarily be removed when the owner of the property moves to another location. *See* Iowa Code § 427A.1(3) (1975). So, as Rose Acre correctly points out, *Cowles* is critical to our determination of the issue before us.

Whether the disputed items are property that would ordinarily be removed when the owner moves to another location is a factual question. *Cowles,* 266 N.W.2d at 634. In *Cowles* this court recited testimony it found important in making this factual determination in favor of the taxpayer. *See id.* at 635–36. From this recitation we glean several factors this court relied on.

First, section 427A.1(3) does not require the owner to take the property and erect it at the owner's new location. Rather, it only requires the property to be ordinarily removed when the owner moves to another location. *Id.* at 635.

Second, owners of property like that in *Cowles* almost always removed the property when they moved to another location. And it was not a common practice to abandon the tower and scrap it. *Id.*

Third, it was economically advantageous for a tower owner to move this type of property rather than to buy new equipment for the new location. Specifically, the taxpayer proved the installation cost of its $644,737 tower and antenna was $119,500. *Id.*

Fourth, there were risk of injury considerations that would make it advantageous for an owner to remove the property when changing locations. *Id.*

Fifth, there was a market for used television transmission equipment including towers. Catalogs had been introduced into evidence that contained advertisements about selling used towers and transmission equipment. *Id.* at 635–36.

Last, referring to the one weakness in the taxpayer's evidence, this court said:

The only possible flaw in *Cowles'* evidence was its failure to produce any evidence to prove a 2000 foot tower-antenna combination had ever been removed. *It did, however, produce testimony the dismantling of such a tower could be accomplished by the reversal of the processes used to assemble the tower. It also established the fact towers are built to be movable.*

*Id.* at 636 (emphasis added).

With these factors in mind, we turn to the evidence in this case.

The disputed items here are considerably less in size and weight than the television tower, antenna, transmission lines, and other transmitting equipment in *Cowles.* The disputed items are also less attached to the realty than such property was. *See Cowles,* 266 N.W.2d at 628–30 (district court made lengthy findings on the description of the property and how the property was attached to the realty, and these findings were quoted verbatim in opinion).

Like the property in *Cowles,* we find the disputed items here were made to be movable. One expert testified the system, made up of the disputed items, is designed to be easily removable. The same expert compared the system to a very large erector set: the system could be easily dismantled by reversing the processes used to assemble it. Rose Acre presented other testimony describing in detail how the system could be taken apart piece by piece and removed without substantial injury to the buildings.

There was also other evidence indicating the disputed items were built to be movable. Generally, buildings like those here have a longer life expectancy than the integrated systems that they house. So it is contemplated in the industry that these systems will need to be replaced at least one or more times over the life of the buildings.

In addition, lease-purchase is a popular way, in the industry, of financing the purchase of property like the disputed items. Of course, if the property is not purchased at the end of the lease, the lessor is entitled to the return of the property. The disputed items here are subject to a five year lease-purchase agreement.

There was testimony about other reasons why, in the egg industry, property like the disputed items is built to be movable. Egg influenza is a graphic example. Egg influenza makes layer and pullet *houses* unusable. But the *property inside* those buildings can be sterilized, removed, and used elsewhere.

The egg industry is highly competitive and concentrated in a few large producers like Rose Acre. These circumstances dictate that such producers operate on a low profit margin. Unexpected increases in costs or a contraction in the egg market can easily result in financial disaster, shut down of a facility, and a separate sale of the property like the disputed items.

Urban growth and natural disasters like fire have in the past caused egg facilities to shut down and move.

Several experts testified that there is a market for property like the disputed items. They testified that trade publications frequently advertise such property for sale, and copies of typical ads were admitted into evidence.

Rose Acre introduced expert testimony that it would be economically advantageous for an egg producer to move property like the disputed items rather than to buy new property for the new location. Given the remaining useful life of the disputed items and the cost of removal, the same could be said of the disputed items. In addition, there was evidence of several instances where property like the disputed items had been removed. Finally, several experts testified that property like the disputed items is the kind of property that would ordinarily be removed when the owner of the property moves to another location.

The board failed to rebut much of this testimony. Instead it presented several experts who testified that the highest and best use of the property is its present use. These experts opined that the greatest value would be realized through the sale of the facility together with the disputed items as a going concern. Based on this testimony the board argues that the disputed items are not the kind of property that would ordinarily be removed when the owner of the property moves to another location. For reasons that follow we think the board's argument is based on faulty premises.

*Cowles* does not mention this "going concern value" argument. And we think it fails to do so for good reason. Section 427A.1(3) contemplates the owner *moving* from the location rather than the owner *selling* the location. We agree with Rose Acre that if the facility and disputed items were sold together as a going concern, the owner has not moved but has sold.

Moreover, section 427A.1(3) must necessarily be applied uniformly regardless of whether the taxpayer owns the facility housing the property in dispute. We also agree with Rose Acre that section 427A.1(3) does not presume that the owner of the facility and the property in dispute are the same. When they are not the same, the owner of the property in dispute who is simply leaving does not even have the the option of selling all of the property as a going concern.

Based on our de novo review, we conclude that the disputed items are of the kind of property that is ordinarily removed when the owner of the property moves to another location. The disputed items are therefore personal property and not subject to tax as real property. The district court's order to the contrary is reversed. The case is remanded for an order reclassifying the disputed items as personal property.

REVERSED AND REMANDED WITH DIRECTIONS.