# In the Iowa Supreme Court

No. 25–1002

Submitted February 18, 2026—Filed June 5, 2026

**Chickasaw County Board of Review,**

Appellant,

vs.

**Property Assessment Appeal Board,**

Appellee,

and

**Growmark, Inc.,**

Intervenor-Appellee.

Appeal from the Iowa District Court for Chickasaw County, Alan Heavens, judge.

Chickasaw County Board of Review appeals the classification of propane tanks as nontaxable equipment under Iowa Code section 427A.1. **Affirmed.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Jamie L. Cox (argued) of Willson & Pechacek, P.L.C., Council Bluffs, for appellant.

Jessica Braunschweig-Norris, General Counsel, and Bradley O. Hopkins (argued), Assistant General Counsel, of Iowa Property Assessment Appeal Board, for appellee.

Jenna L. Wheeler (argued), Deborah M. Tharnish, and Sarah K. Franklin of Dentons Davis Brown PC, Des Moines, for intervenor.

Timothy N. Lillwitz and Benjamin J. Kenkel of Dickinson, Bradshaw, Fowler & Hagen P.C., Des Moines, for amicus curiae FUELIowa.

**Oxley, Justice.**

Growmark, Inc. owns eleven 90,000-gallon propane fuel tanks located at the company's New Hampton fuel terminal. The Chickasaw County assessor valued those eleven tanks at nearly $2 million and included that value in its final assessment of the property—a decision the Chickasaw County Board of Review (Board of Review) affirmed. The Board of Review concluded that the propane tanks were taxable real property, classifying them as "improvements" under Iowa Code section 427A.1(1)(*c*) (2023).

Growmark appealed that decision to the Property Assessment Appeal Board (PAAB), where the Board of Review's decision was reversed. The PAAB determined that the propane tanks were unattached "equipment" and therefore not taxable under section 427A.1(1)(*d*). As discussed below, we agree with the PAAB that Growmark's propane tanks are unattached equipment and not taxable as real property.

### I. Factual Background & Proceedings.

The facts underlying this case are fairly straightforward. Growmark is an agricultural cooperative. It provides various products and services to retailers, businesses, and customers throughout the United States and Canada. As a part of its business operations, Growmark manages a fuel terminal in New Hampton that serves as a distribution site. It purchased the site in December 2016 for $2 million, which included eleven 90,000-gallon propane fuel tanks. Growmark has several other distribution sites across the state.

The tanks store propane until the propane is loaded onto trucks and delivered to Growmark's customers, most of whom are local farmers. The tanks sit on top of concrete "saddles," or piers, which serve as foundations for the tanks. The tanks are held in place by gravity alone; they are not fastened or

otherwise attached to the saddles. The tanks can be moved from one property to another if needed, but they have sat on the New Hampton site since 1977.

**A. Growmark Challenges the Tanks' Assessment.** In 2023, the Chickasaw County assessor performed an assessment of Growmark's New Hampton location for purposes of property taxes. The assessor valued the eleven propane tanks at $1,959,500 and incorporated that value in its final assessment of the New Hampton taxable property. Growmark filed a petition with the Board of Review claiming that the value of the tanks should have been excluded from the assessment. Growmark identified a recent unpublished opinion from the court of appeals—*McDermott Propane, LLC v. Board of Review*, No. 20–1619, 2022 WL 468702, at *1 (Iowa Ct. App. Feb. 16, 2022)—where the court held that similar 30,000-gallon above-ground propane storage tanks were nontaxable equipment rather than taxable improvements to the land for purposes of property tax assessments. Since the court of appeals decided *McDermott Propane*, numerous county boards of review across the state, including the Chickasaw County Board of Review, stopped classifying pressure tanks of 30,000 gallons or less as assessable property.

Growmark asked the Board of Review to similarly reclassify its 90,000-gallon propane tanks as nontaxable equipment. The Board of Review denied Growmark's request and concluded that the propane tanks were taxable "improvements" under section 427A.1(1)(*c*).

**B. PAAB Proceedings.** Growmark appealed the Board of Review's decision to the PAAB, relying on *McDermott Propane* to argue that its tanks are not taxable as "equipment" under section 427A.1(1)(*d*). Growmark's chief operating officer provided an affidavit in which he stated that the propane tanks are movable and that Growmark would indeed take the tanks with it if it moved its operations.

Moving each tank to another location in the county would cost approximately $28,124, whereas replacing each tank would cost at least $180,000. The affidavit also stated that the boards of review in thirty-one counties across the state had removed storage tanks sized at 30,000 gallons or less from the 2024 property assessments.

The Board of Review resisted, arguing that *McDermott Propane* was wrongly decided because the parties in that case failed to note that "[a]bove-ground storage tanks have always been assessed as real property because they are improvements that serve as warehouses." The Board of Review instead relied on our recent decision in *StateLine Cooperative v. Iowa Property Assessment Appeal Board*, 958 N.W.2d 807 (Iowa 2021). Because Growmark's propane tanks are only used to store fuel, rather than process it, the Board of Review contends that they are taxable improvements under section 427A.1(1)(*c*). Under the Board of Review's characterization of *StateLine Cooperative*, an item is an improvement under section 427A.1 when it is used for storage rather than processing.

The Board of Review supported its argument with several Iowa Department of Revenue (DOR) materials that treat storage tanks as taxable real property: the Iowa Real Property Appraisal Manual; two Industrial Machinery and Equipment Valuation Guides, one from 1977 and the updated version from 1984; a 1985 internal DOR memo; and a 1986 Property Tax Technical Bulletin. According to Robert Ehler, a certified real estate appraiser "in charge of updating the costs in . . . the Iowa Real Property Appraisal Manual," all storage mechanisms are essentially warehouses in different forms depending on what is being stored.

The PAAB granted summary judgment in favor of Growmark, following the court of appeals' lead in *McDermott Propane* to classify the tanks as equipment

under section 427A.1(1)(*d*). Thus, the PAAB ordered Growmark's propane tanks to be removed from the 2023 property assessment.

**C. District Court Proceedings.** The Board of Review petitioned for judicial review of the PAAB's decision in the Iowa District Court for Chickasaw County, and the district court affirmed the PAAB's decision. Like the PAAB, the district court distinguished this case from *StateLine Cooperative* and followed the court of appeals decision in *McDermott Propane*.

The Board of Review appealed the district court's ruling, and we retained the case.

**II. Analysis.**

This case turns on whether Growmark's propane tanks are classified as improvements or equipment under Iowa Code section 427A.1(1). The Board of Review asserts that Growmark's propane tanks are taxable real property as "improvements . . . which are . . . placed upon a foundation whether or not attached to the foundation" under paragraph (*c*). Iowa Code § 427A.1(1)(*c*). Growmark argues that they are "equipment" as contemplated in paragraph (*d*). *Id.* § 427A.1(1)(*d*). And because they are not attached to a "building[], structure[], or improvement[] defined in paragraph '*c*,' " *id.*, they fail to meet the definition of taxable real property and are exempt from taxation as personal property, *see id.* § 427A.2 ("Personal property shall not be listed or assessed for taxation and is not subject to the property tax.").

**A. Standard of Review.** In an appeal of an agency decision on judicial review, we "apply the standards of chapter 17A to determine if we reach the same results as the district court." *StateLine Coop.*, 958 N.W.2d at 812 (quoting *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 260 (Iowa 2010)). A court "may grant relief if the agency action has prejudiced the

substantial rights of the petitioner and if the agency action meets one of the enumerated criteria contained in section 17A.19(10)(*a*) through (*n*)." *Renda v. Iowa C.R. Comm'n,* 784 N.W.2d 8, 10 (Iowa 2010). When the agency's action turns on an interpretation of a statute, as here, our review depends on whether the general assembly has vested the agency with interpretive authority. If it has not, we review its interpretation for errors of law. *See* Iowa Code § 17A.19(10)(*c*) ("The court shall reverse, modify, or grant other appropriate relief from agency action . . . because the agency action is . . . [b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency."). If it has, we may only reverse an interpretation that is "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*l*).

As we recently held in *StateLine Cooperative,* "[t]he Iowa Code does not expressly confer interpretive authority on the PAAB," and—like the term *machinery* at issue in that case—the terms *equipment* and *improvement* in section 427A.1(1) are not "substantive term[s] within the special expertise of the [PAAB]." 958 N.W.2d at 813 (second alteration in original) (quoting *Renda,* 784 N.W.2d at 14, and holding that the PAAB lacked statutory authority to interpret the term *machinery* in section 427A.1(1)); *see also Wendling Quarries, Inc. v. Prop. Assessment Appeal Bd.,* 865 N.W.2d 635, 637–38 (Iowa Ct. App. 2015) (reviewing the PAAB's decision interpreting Iowa Code sections 427A.1(1)(*c*) & (*d*) for errors at law). Thus, we review the PAAB's decision for errors of law, Iowa Code § 17A.19(10)(*c*), without deferring to the PAAB's interpretation of the relevant statutory provisions, *see StateLine Coop.,* 958 N.W.2d at 813.

In reviewing the PAAB's decision, "[w]e are bound by [the] PAAB's findings of fact if they are supported by substantial evidence." *Id.* at 812 (quoting *Wendling Quarries*, 865 N.W.2d at 638). "On petition for judicial review to the district court, the burden is on the party asserting the invalidity of the agency action . . . ." *Id.* (quoting *Wendling Quarries*, 865 N.W.2d at 638). As such, the Board of Review has the burden of showing that the PAAB's decision is invalid.

**B. Deference to DOR Materials.** The Board of Review urges us to defer to several DOR materials in our interpretation of section 427A.1. Specifically, it relies on the Iowa Real Property Appraisal Manual, the Industrial Machinery and Equipment Valuation Guides from 1977 and 1984, an internal DOR memo from 1985, and a 1986 Property Tax Technical Bulletin—all of which treat storage tanks as taxable real property. Determining the level of deference owed to the DOR's interpretation of section 427A.1 is more nuanced than our consideration of the deference we owe to the PAAB. As explained below, we conclude that these materials are not entitled to deference in this case.

The DOR has been vested with the authority to interpret section 427A.1. *StateLine Coop.,* 958 N.W.2d at 813–14 (concluding that the DOR's directive to promulgate rules under section 427A.1(9)[1] "goes beyond mere rulemaking authority, but appears to grant authority to the DOR to interpret—i.e., 'carry out the intent of'—section 427A.1"); *see also Story Cnty. Wind, LLC v. Story Cnty. Bd. of Rev.,* 990 N.W.2d 282, 288 (Iowa 2023) (noting that the DOR has some interpretive authority with respect to section 427A.1). In *StateLine Cooperative*, we gave deference to an administrative rule describing when machinery is used

---

[1]This provision has since been moved to Iowa Code section 427A.1(10) (2023).

in a manufacturing environment for purposes of section 427A.1(1)(*e*). *StateLine Coop.*, 958 N.W.2d at 813 (discussing Iowa Admin. Code rule 701—71.1(7)(*b*)(1)).

However, the fact that the DOR has been granted authority to interpret section 427A.1 as part of its rulemaking authority does not end our inquiry. We have generally given deference to two types of agency interpretations. The first type is when we interpret rules promulgated by the agency through the rulemaking process. *See id.*; *see also Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838–40 (Iowa 2013) ("[T]he legislature's express grant of interpretive authority dictates a deferential standard of review that requires reversing the district court and upholding [Iowa Administrative Code rule 655—7.2(2)] promulgated by the nursing board and [Iowa Administrative Code rule 641—41.1(5)(*n*) promulgated by] the department of public health."); *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Rev.*, 723 N.W.2d 167, 172–77 (Iowa 2006) (holding that where the interpretation of a specific code section was vested in the DOR, "we must give the agency's interpretation of this statute through its administrative rules the deference directed by Iowa Code section 17A.19(11)(*c*)"); *Auen v. Alcoholic Beverages Div. of the Iowa Dep't of Com.*, 679 N.W.2d 586, 589–90 (Iowa 2004) (holding that the Alcoholic Beverages Division's adoption of Iowa Admin. Code rule 185—16.2 to interpret Iowa Code section 123.45 was entitled to deference). The second category comes from agency decisions in a contested case where we are directly reviewing that agency decision. *See AFSCME Iowa Council 61 v. Iowa Pub. Emp. Rels. Bd.*, 846 N.W.2d 873, 877–78 (Iowa 2014) (giving deference to the Public Employment Relations Board's decision in a contested case requiring interpretation of Iowa Code section 20.9); *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 422–24 (Iowa 2010) (holding that an agency's interpretive authority to which deference is owed extends beyond rulemaking to

decisions in a controversy pending before the agency, i.e., its decision in a contested case).

Here, we are not asked to review a rule promulgated by the DOR. And this is not a contested case where the DOR determined that these propane tanks are taxable; the PAAB made that decision. Rather, the Board of Review asks us to defer to several internal DOR materials, none of which take the form of an agency rule. Yet, the Board of Review has not cited, and we have not located, cases giving section 17A.19(11)(*c*)-level deference to these types of agency guidance in this context. *See* Iowa Code § 17A.19(11)(*c*) ("In making the determinations required by subsection 10, . . . the court . . . [s]hall give appropriate deference to the view of the agency with respect to particular matters that have been vested by a provision of law in the discretion of the agency.").

We have cautioned against relying on agency manuals that were not "validly adopted agency rule[s] or a written statement of policy within the meaning of [Iowa Code] section 17A.3(2)." *Anderson v. Iowa Dep't of Hum. Servs.*, 368 N.W.2d 104, 107–08 (Iowa 1985) (holding that the department's hearing officer improperly relied on Medicaid eligibility guidelines contained in a department manual addressing an issue about use of funds from a jointly owned bank account that was not addressed in a rule or official policy statement); *see also* Iowa Code § 17A.3(2) ("No agency rule or other written statement of law or policy, or interpretation, order, decision, or opinion is valid or effective against any person or party, nor shall it be invoked by the agency for any purpose, until it has been made available for public inspection and indexed as required by subsection 1."). We heed Professor Arthur Bonfield's "caution[] against communicating policies affecting the public without following the procedures for rulemaking." *Anderson*, 368 N.W.2d at 108.

On the other hand, the DOR is statutorily required "[t]o prepare and issue a state appraisal manual[,] which each . . . assessor shall use in assessing and valuing all classes of property in the state." Iowa Code § 421.17(17). A copy of the Iowa Real Property Appraisal Manual is not included in the agency record (the Board of Review relies on the Chickasaw County assessor's description of the appraisal manual in his affidavit), but it is publicly available on the DOR's website. *See* Iowa Dep't of Revenue, *Iowa Real Property Appraisal Manual.* https://revenue.iowa.gov/taxes/tax-guidance/property-tax/iowa-real-property -appraisal-manual (last visited May 29, 2026). While these non-administrative rule types of materials might be worthy of some level of consideration, we conclude that they are not owed the deference required by section 17A.19(11)(*c*) given the specific issues involved in this case.

Both the 1977 and 1984 versions of the Valuation Guide list "tanks" under the "building" category and "tanks or silos (used in processing)" as "machinery and equipment." Neither version explains the statutory basis for considering nonprocessing tanks as buildings and processing tanks and silos as machinery and equipment. Characterizing tanks as buildings is inconsistent with the Board of Review's current position that they are improvements. Further, the 1977 and 1984 guides are outdated where they state that "machinery and equipment used in . . . manufacturing establishments is to be assessed as real estate" without recognizing the fact that machinery used in manufacturing identified in section 427A.1(1)(*e*) has been fully exempt from taxation since 2002. *See* Iowa Code § 427B.17(3)–(4). The Board of Review relies on the Chickasaw County assessor's affidavit that explained that the "Iowa Real Property Appraisal Manual . . . identifies the pricing for welded steel pressure tanks based on a gallon capacity . . . . The previous and current versions of the [appraisal] manual

identify tanks as real property, and they give direction on their value by style and size." The manual makes no reference to a minimum size or a specific use for a tank before it is deemed to be taxable. Rather, it has provided a valuation for all types of pressure tanks based on their size (starting with 1,000-gallon tanks) since the manual was put into use in 1977, without explaining the statutory basis for determining whether a specific tank is taxable real property. Importantly, the Iowa Code has changed with respect to the taxability of real property since 1977. As the Board of Review argues, tanks used in manufacturing processes are not taxable. Yet, that distinction is not identified in the appraisal manual.

Neither the appraisal manual nor the valuation guides provide any guidance on the preliminary issue of whether storage tanks are classified as an improvement under section 427A.1(1)(*c*) or as equipment under section 427A.1(1)(*d*). Because these materials do not address the specific issue that we must resolve in this case, we do not defer to them. *Cf. Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 279 (Iowa 2018) (Mansfield, J., dissenting) (arguing that no deference is owed to a DOR administrative rule because it did "not take into account or even mention" relevant new caselaw); *City of Marion v. Iowa Dep't of Rev. & Fin.*, 643 N.W.2d 205, 206 (Iowa 2002) (giving deference to a DOR regulation that "the department revised . . . to accommodate [a] legislative change[]").

The Board of Review also relies on an internal DOR Memorandum dated October 1, 1985, and a related tax bulletin from 1986. The memo was written to Brian Bruner, Administrator, Property Tax Division, to address the following issue: "[i]n light of the decision of the Iowa Supreme Court in *Western Outdoor Advertising Co. v. Board of Review*, . . . are storage tanks to be classified and

assessed as real estate or as personal property?" After discussing the court's holding in that case, the memo explained:

> The effect of the Court's decision in *Western Outdoor Advertising* . . . is that the "ordinarily removed" provision of Iowa Code §427A.1(3) applies only to property that is real estate because it is attached to the land. Property that is constructed on or in the land or placed upon a foundation is to be assessed as real estate regardless of whether it is the type of property ordinarily removed when the owner relocates.

> In summary, a storage tank is an improvement to be assessed as real estate if it is: (1) assembled (constructed) at the site on which it will be located; (2) constructed in the ground (such as an underground tank[)]; (3) placed upon a foundation; or (4) attached to the land as defined in Iowa Code § 427A.1(2) and not the type of property defined in § 427A.1(3). In general, it would appear the majority of storage tanks will be assessed as real estate.

A 1986 Property Tax Technical Bulletin provided to assessors similarly explained that our *Western Outdoor* decision "directly impacts on the classification and assessment of storage tanks," providing a nearly verbatim conclusion as the 1985 memo. It does not appear that this clarification made its way into the appraisal manual.

As discussed in more detail below, *Western Outdoor Advertising Co. v. Board of Review*, 364 N.W.2d 256, 257 (Iowa 1985), involved a billboard anchored into the ground and an argument that the sign was ordinarily removed under a new code provision. *See* Iowa Code § 427A.1(3) ("[P]roperty is not '*attached*' if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location."). To the extent that the 1985 memo might be an interpretation of how storage tanks should be treated under 427A.1(1)(*c*), it was focused on how removability affected the taxation of storage tanks as improvements at issue in *Western Outdoor*. It did not consider the initial distinction at issue here: the difference between classifying property as an

improvement under paragraph (*c*) or equipment under paragraph (*d*), or how removability affects the classification of equipment under paragraph (*d*). Further, since the 1985 memo was written, property tax laws have changed. *See Rose Acre Farms, Inc. v. Bd. of Rev.*, 479 N.W.2d 260, 262 (Iowa 1991) (noting that the general assembly repealed all taxes on personal property, as defined in Iowa Code section 427A.1, effective July 1, 1987). In addition, Iowa caselaw has again clarified the impact that removability has on the classification of an item under section 427A.1, distinguishing between improvements and equipment based, at least in part, on removability. *See id.* at 262–63; *Wendling Quarries*, 865 N.W.2d at 639–42. We therefore consider the forty-year-old memo and the related technical bulletin, but for these reasons, we decline to give them the deferential weight required by section 17A.19(11)(*c*). *See Nance*, 908 N.W.2d at 279 (Mansfield, dissenting); *cf. City of Marion*, 643 N.W.2d at 206.

**C. Interpreting Tax Statutes Generally.** We have one more housekeeping matter before getting to the merits of this appeal. We have previously said that "[s]tatutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body" and conversely, that tax "exemption[s] [are] construed strictly against the taxpayer and liberally in favor of the taxing body." *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 762–63 (Iowa 1981); *accord Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 46 (Iowa 2018); *see also StateLine Coop.*, 958 N.W.2d at 812–13 (expressing skepticism over our judicially created rules of construction, citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 362 (2012)). However, nothing in the Iowa Code instructs us to review tax statutes in this way.

In fact, we have noted that these principles of construction may actually contradict each other, as well as the plain language of the Iowa Code. *See Story Cnty. Wind, LLC*, 990 N.W.2d at 288 (stating that the two rules of construction are "potentially conflicting principle[s]"); *S. Iowa Methodist Homes, Inc. v. Bd. of Rev. of Cass Cnty.*, 136 N.W.2d 488, 489–90 (Iowa 1965) (stating that these principles "seem to be in conflict" with Iowa Code section 4.2, which mandates the court to construe Iowa Code provisions liberally); *accord Stingray Pressure Pumping, L.L.C. v. Harris*, 222 N.E.3d 597, 602–03 (Ohio 2023) (concluding similar principles of construction contradict the court's "often-expressed commitment to apply the plain and ordinary meaning of statutory text").

In the rare case where we have provided a justification for these principles of construction, our justifications were rooted in policy, an area better left to the legislature. *See, e.g., Van Buren Cnty. Hosp. & Clinics v. Bd. of Rev.*, 650 N.W.2d 580, 586 (Iowa 2002) (noting that these principles are justified because "exemptions from taxation are generally disfavored as contrary to the democratic notions of equality and fairness, and exist solely due to legislative grace"); *accord Stingray Pressure Pumping, L.L.C.*, 222 N.E.3d at 602 ("While this court has continued to cite the principle, we have not grounded the strict-construction rule in the statutory language of the tax exemption under consideration. Rather, we have justified the rule based upon notions about what constitutes good tax policy."). Yet, "[o]ur task is 'to determine the ordinary and fair meaning' of the statutes at issue" based on its language. *Cianzio v. Iowa State Univ.*, 14 N.W.3d 716, 719 (Iowa 2024) (quoting *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020)); *accord Stingray Pressure Pumping, L.L.C.*, 222 N.E.3d at 603.

Moving forward, we will construe tax statutes according to their ordinary meaning and apply the same principles of construction we apply to any other

type of statute. We overrule our prior cases to the extent they say otherwise. *See,
e.g., Christensen v. Iowa Dep't of Revenue*, 944 N.W.2d 895, 904 (Iowa 2020);
*Lowe's Home Ctrs.*, 921 N.W.2d at 46; *Sherwin-Williams Co.*, 789 N.W.2d at 424;
*Iowa Auto Dealers*, 301 N.W.2d at 762–63.

**D. Statutory Framework for Classifying Property as Real Property
Under Section 427A.1(1).** Chapter 427A creates a dichotomy between real
property and personal property. Anything not classified as real property under
section 427A.1 is considered nontaxable personal property under section
427A.2. *Contrast* Iowa Code § 427A.1 (describing "[p]roperty taxed as real
property"), *with id.* § 427A.2 (providing that "[p]ersonal property . . . is not
subject to property tax"). After the repeal of property taxes assessed against
personal property in 1987, "it becomes critical whether . . . disputed
items . . . are [real or] personal property under section 427A.1." *Rose Acre Farms*,
479 N.W.2d at 262; *see also Griffin Pipe Prods. Co. v. Bd. of Rev.*, 789 N.W.2d
769, 773 (Iowa 2010) (discussing the history of section 427A.1).

As relevant here, Iowa Code section 427A.1 identifies real property subject
to property tax as follows:

> 1. For the purposes of property taxation only, the following
> shall be assessed and taxed, unless otherwise qualified for
> exemption, as real property:
>
> . . . .
>
> c. Buildings, structures, or improvements, any of which are
> constructed on or in the land, attached to the land, or placed upon
> a foundation whether or not attached to the foundation. . . .
>
> d. Buildings, structures, equipment, machinery, or
> improvements, any of which are attached to the buildings,
> structures, or improvements defined in paragraph "*c*" of this
> subsection. . . .
>
> e. Machinery used in manufacturing establishments. . . .

Iowa Code § 427A.1(1).

Even though "[m]achinery used in manufacturing establishments" is listed in paragraph (*e*), it has essentially been fully exempt from taxation since 2002 through the assessment imposed by section 427B.17. *See* Iowa Code § 427B.17(3), (4); *see also Griffin Pipe Prods. Co.*, 789 N.W.2d at 773 & n.2 (explaining that "property taxed under paragraph (*e*) became exempt if it was assessed for the first time on or after January 1, 1995" pursuant to section 427B.17(3) and "[a]ll other taxes imposed under paragraph (*e*) were phased out between 1999 and 2002" pursuant to section 427B.17(4)).

Thus, under section 427A.1, buildings, structures, and improvements are assessed and taxed as real property if they are: constructed on the land; attached to the land; or placed on a foundation, regardless of whether they are attached to the foundation. *Id.* § 427A.1(1)(*c*). Equipment and machinery are assessed and taxed as real property if they are attached to taxable buildings, structures, or improvements, *id.* § 427A.1(1)(*d*), unless they are the type of property the owner would ordinarily remove and take when it moves to a new location, *id.* § 427A.1(3). A specific type of machinery—machinery that is used in manufacturing—is assessed as real property, *id.* § 427A.1(1)(*e*), but not taxed, *id.* § 427B.17(3)–(4).

It is undisputed that the propane tanks in this case are unattached to the concrete saddles on which they rest. It is also undisputed that the concrete saddles on which the tanks sit are foundations that are considered either structures or improvements under paragraph (*c*). The Board of Review argues that the tanks are improvements that sit on foundations and are therefore assessed as real property under paragraph (*c*). Growmark argues they are

unattached equipment and therefore are excluded from the definition of real property under paragraph (*d*).

1. *The functional difference between storage tanks and processing tanks has no bearing on whether the tanks are equipment or improvements.* The Board of Review's experts claim that storage tanks have always been assessed as improvements because they are essentially interchangeable with silos or warehouse buildings. According to one expert, "[a] warehouse that stores solid products is configured as a storage warehouse building, a warehouse that stores grain is configured as a grain bin, and a warehouse that stores a liquid is configured as a tank." The Board of Review argues that our holding in *StateLine Cooperative* supports this distinction and urges us to focus on whether the tanks are used for storage or for processing. *See* 958 N.W.2d at 814–16.

Our statutory framework, however, does not align with the Board of Review's proposed test. In *StateLine Cooperative*, we analyzed whether two "stand-alone corn silos" and several "ingredient bins" were "[m]achinery used in [a] manufacturing establishment[]" under section 427A.1(1)(*e*). *Id.* at 809, 816. As previously noted, paragraph (*e*) is a narrower class of manufacturing property that the general assembly has exempted from taxation. *See Griffin Pipe Prods. Co.*, 789 N.W.2d at 773 (discussing the general assembly's chronology of making more categories of property nontaxable). Whether property is the type of "machinery" that fits under section 427A.1(1)(*e*) turns solely on the item's specific use in a manufacturing endeavor. *See* Iowa Code § 427A.1(1)(*e*) ("Machinery *used* in [a] manufacturing establishment." (emphasis added)). We determined that the ingredient bins were machinery because they were "part of the sequential manufacturing process at the feed mill" and did not have "any independent value as storage." *StateLine Coop.*, 958 N.W.2d at 816. In contrast,

we classified the silos at issue as taxable "storage buildings"—not machinery—because "[n]o processing or manufacturing occur[red] at the silos themselves." *Id.* The distinction we made between processing and storage went to whether the items were "used in manufacturing" for purposes of paragraph 427A.1(1)(*e*) because they would be exempt from taxation under section 427B.17 only if they were so used. *Id.*

But that distinction in *StateLine Cooperative* has no relevance to the distinction between improvements and equipment that lies at the heart of this appeal. The silos in *StateLine Cooperative* were taxable because they were "buildings" under paragraph (*c*), not because they served a warehousing storage function. *See* 958 N.W.2d at 810 ("The larger corn storage bin—*really a separate silo building*—has a capacity of 566,394 bushels and can supply sixteen to twenty days of full-scale production at the feed mill. The smaller corn storage bin—*also a separate silo building*—has a capacity of 147,456 bushels and can supply four to five days of full-scale production. From the outside, both silos look similar to typical corn storage facilities." (emphases added)). The dispute in *StateLine Cooperative* between machinery used in manufacturing versus buildings does not address the separate issue here between nonmanufacturing equipment versus improvements.

Outside of paragraph (*e*), section 427A.1(1) does not determine taxability solely by function—i.e., treating all storage containers as taxable real property and all processing containers as nontaxable manufacturing items. The storage versus processing distinction is not dispositive if the item under consideration is equipment under paragraph (*d*) rather than a building under paragraph (*c*). Indeed, "[p]aragraph (*d*) is a larger classification that might include equipment used *in both commercial and manufacturing activities*, but paragraph (*e*) is a

narrower class that applies only for equipment used in manufacturing establishments." *Griffin Pipe Prods. Co.*, 789 N.W.2d at 775 (emphasis added) (holding that a cupola, an annealing furnace, and a steel exhaust stack used in a foundry, which would otherwise be considered common law fixtures, were "[m]achinery used in manufacturing" for purposes of paragraph (*e*)).

*StateLine Cooperative* teaches that a storage function is not the processing function required to fit equipment into paragraph (*e*)'s manufacturing status. In other words, a piece of equipment's use moves it into paragraph (*e*) if it is used for manufacturing (i.e., processing), but equipment used in a commercial activity is still equipment that falls into paragraph (*d*). Even equipment that serves a storage function (i.e., a commercial activity), could be nontaxable—if the equipment is unattached. *See Rose Acre Farms, Inc.*, 479 N.W.2d at 263 ("[If] items are not attached for purposes of section 427A.1(1)(*d*)," they "would not be taxed as real property because 'attachment' is a necessary factor for taxability of equipment and machinery under section 427A.1(1)(*d*)."). Thus, it is not enough to say that propane tanks serve the same storage function as a building. No one argues that the tanks are buildings. The dispositive question here is whether the tanks are improvements under paragraph (*c*) or equipment under paragraph (*d*).

2. *Iowa caselaw on the distinction between equipment and improvements to the land.* The distinction between improvements and equipment under section 427A.1(1) has been addressed only twice before in a published Iowa appellate opinion. In *Rose Acre Farms, Inc. v. Board of Review*, we determined that various items used in an egg producer's business operations—including chicken cages, a feeding and water system, a manure removal system, an egg collection system, and bulk bins—were "more clearly 'equipment.'" *Rose Acre Farms, Inc.*, 479 N.W.2d at 261, 263. Most of the items were mounted to a metal A-frame

structure that sat on top of a superstructure elevated off the limestone floor. *Id.* at 261. The feeding system hung from the ceiling by chains, and the bulk bins were bolted to a concrete base. *Id.* at 261. We concluded, with little explanation, that the "disputed items would commonly be understood to be equipment or machinery" rather than improvements. *Id.* at 263.

We then considered whether the items were the type of property the owner would remove for purposes of section 427A.1(3). *Id.*; *see* Iowa Code § 427A.1(3) ("[P]roperty is not 'attached' if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location."). Relevant factors included whether similar owners usually removed the items when they moved locations rather than abandoning them; whether it was "economically advantageous" to move the items rather than purchase replacements; whether there was a market for selling the items; and the ease or difficulty of removing the items. *Id.* at 263–64 (discussing facts we had considered in *Cowles Commc'ns Inc. v. Bd. of Rev.*, 266 N.W.2d 626, 628–30 (Iowa 1978), *superseded by statute*, 1977 Iowa Acts ch. 43, § 14, *as recognized in W. Outdoor Advert. Co.*, 364 N.W.2d at 257–58). We concluded that the egg processing equipment fit within the ordinarily removed exception to attachment, where: they were compared "to a very large erector set" that was "designed to be easily removable" and "could be easily dismantled"; trade magazine advertisements reflected the ready market for the items; and experts testified it was economical to move the items rather than buy replacements if it moved to a new location. *Id.* at 264.

Using *Rose Acre Farms* as guidance, in *Wendling Quarries* the court of appeals analyzed whether a truck scale used in a quarry's mining operation was equipment or an improvement. *Wendling Quarries*, 865 N.W.2d at 642. The scale was seventy feet long and eleven feet wide, had a thick concrete top, and could

only be moved with a crane. *Id.* Whereas the PAAB and the district court "understood the scale and the concrete base on which it rests together to form the taxable property," the court of appeals "view[ed] them as being separate for the purpose of taxation." *Id.* The base, which consisted of concrete piers sunk four feet into the ground and concrete approach ramps and washout areas that allowed trucks to approach the scale, was taxable as either a structure or improvement constructed on or in the land. *Id.* This conclusion (which was uncontested) was supported by the facts that the concrete base "increase[d] the utility of the land at the quarry site by allowing the owner to place a scale over it" and was "relatively permanent when compared to the scales." *Id.* The court described the scales, on the other hand, as "an implement used to weigh mining products." *Id.* Analogizing to the "egg production equipment in *Rose Acre Farms*," the court noted that "the scale's components are easily disassembled and removed by reversing the assembly process[] and leave no damaging impact on the land or the concrete base." *Id.* The court "view[ed] the scale as a piece of mining equipment that can be taken apart and freely bought and sold between mining operations." *Id.* Thus, the scale at issue in *Wendling Quarries* was equipment under paragraph (*d*) of section 427A.1 rather than an improvement under paragraph (*c*). *Id.*

In this case, the PAAB and the district court relied on the unpublished opinion from the court of appeals, *McDermott Propane*, which also addressed the improvement versus equipment distinction. *See* 2022 WL 468702, at *1. That case concerned a nearly identical situation as here involving bulk tanks used at a fuel distribution facility. *Id.* Similar to Growmark, McDermott Propane was "in the business of distributing propane to agricultural, commercial, and residential customers." *Id.* In 2016, McDermott Propane relocated its operations to a new

three-acre parcel of land, which it leveled and filled with gravel and limestone before installing precast concrete piers to hold three 30,000-gallon tanks, two of which were moved from McDermott Propane's original location. *Id.* at *1–2. The Dubuque County Board of Review and the district court concluded that the tanks were either improvements under section 427A.1(1)(*c*) or attached equipment under section 427A.1(1)(*d*), so they were assessable as real property either way. *Id.* at *2–4.

On appeal, McDermott Propane first argued that the tanks were equipment, not improvements. *Id.* at *4. It then argued that as equipment, they were unattached. *Id.* To the extent that the pipes that connected the tanks to the bulkhead for purposes of loading and unloading fuel meant the tanks were "attached" to the saddles for purposes of section 427A.1(1)(*d*), they should be deemed not attached under the ordinarily removed provision of section 427A.1(3). *Id.* at *4–5.

The court of appeals relied heavily on its prior opinion in *Wendling Quarries*, explaining:

> In *Wendling*, we rejected the district court's categorization of a quarry scale used to weigh mining products as an "improvement" because, while the concrete piers and approach ramps supporting the scale increased the utility of the land and were more or less permanent, the scale standing alone was "a piece of mining equipment that [could] be taken apart and freely bought and sold between mining operations." *Wendling Quarries*, [865 N.W.2d at 642].[2] For taxation purposes, we distinguished the underpinnings of the scale from the scale itself because only the latter could be "easily disassembled and removed by reversing the assembly process, and leave no damaging impact on the land or the concrete base." [*Wendling Quarries*, 865 N.W.2d at 641.] Like the scale in *Wendling*

---

[2]In *McDermott Propane*, the court of appeals identified *Wendling Quarries* as an unpublished opinion, citing to the version listed in the Northwestern Reporter table at 863 N.W.2d 35. However, *Wendling Quarries* was subsequently published in the Northwestern Reporter at 865 N.W.2d 635. To avoid any confusion, we cite only the published version of the *Wendling Quarries* opinion.

> *Quarries*, the tanks here are pieces of equipment that are integral to the propane distribution process yet can be taken apart and separated from the rest of the operation.

*McDermott Propane*, 2022 WL 468702, at *4. Thus, the court of appeals rejected the district court's conclusion that "the tanks could fit under either [improvement or equipment] because they had 'intrinsic value' and were 'McDermott's only use of the property.'" *Id.* Those facts were insufficient to make the tanks improvements where they were "integral to the propane distribution process yet can be taken apart and separated from the rest of the operation." *Id.* The court of appeals also noted that "just like the scale in *Wendling Quarries*, the undisputed evidence shows the tanks are freely bought and sold within the fuel industry nationwide." *Id.* at *5 (relying on testimony from McDermott Propane's president that he received "e-mails every week from across the country people looking to buy or sell tanks"). Ultimately, the court of appeals concluded that "the tanks are more clearly 'equipment' under section 427A.1(1)(*d*) rather than improvements to the land." *Id.*

3. *Whether an item "would ordinarily be removed" sheds light on whether it is equipment or an improvement.* The Board of Review argues that removability as discussed in section 427A.1(3) is irrelevant here because everyone agrees the tanks are not attached. *See* Iowa Code § 427A.1(3) (providing that "property is not '*attached*' if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location"). The Board of Review attempts to distinguish *McDermott Propane* on that basis. Although section 427A.1(3) is not needed here to determine whether the equipment should be considered "not '*attached*'" because the parties agree the tanks are already unattached, the Board of Review is wrong to use that as a basis to distinguish *McDermott Propane*. Determining whether an item is an improvement or

equipment involves "several factors," one of which is removability. *Rose Acre Farms, Inc.*, 479 N.W.2d at 263.

Section 427A.1 includes a specific definition for what it means for something to be "attached" for purposes of subsection (1):

> 2. As used in subsection 1, "*attached*" means any of the following:
>
> *a.* Connected by an adhesive preparation.
>
> *b.* Connected in a manner so that disconnecting requires the removal of one or more fastening devices, other than electric plugs.
>
> *c.* Connected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed.

Iowa Code § 427A.1(2). Removability comes into play as an exception to the definition of attached. "Notwithstanding the definition of '*attached*' in subsection 2, property is not '*attached*' if it is a kind of property which would *ordinarily be removed* when the owner of the property moves to another location." *Id.* § 427A.1(3) (emphasis added).

Whether an item that is constructed on or in the land or placed on a foundation is attached does not matter under section 427A.1(1)(*c*). *Rose Acre Farms, Inc.*, 479 N.W.2d at 263; *Western Outdoor Advert. Co.*, 364 N.W.2d at 258. In *Western Outdoor Advertising Co.*, we addressed how the then-recent enactment of the ordinarily removed provision in section 427A.1(3) impacted the taxation of real property under paragraph (*c*)—specifically, billboard signs mounted on poles anchored into the ground. *See* 364 N.W.2d at 257–58. The taxpayer argued that its signs would ordinarily be removed, so they should not be considered real property under section 427A.1(3). *Id.* We rejected that argument because the billboard signs were assessed as "structures or improvements 'constructed on or in the land'" under paragraph (*c*), which did

not turn on whether they were attached to the land. *Id.* at 258. Because the billboards' assessment did not turn on attachment, the billboards "were properly assessable as real property without regard to" whether they would ordinarily be removed under section 427A.1(3). *Id.*

In contrast, attachment is a necessary prerequisite for any of the items listed in paragraph (*d*) to be taxed as real property: "Buildings, structures, equipment, machinery, or improvements, *any of which are attached to* the buildings, structures, or improvements defined in paragraph "*c*" of this subsection." *Id.* § 427A.1(1)(*d*) (emphasis added). In *McDermott Propane*, fuel tanks were deemed equipment after the court of appeals determined they were ordinarily removable from the saddles on which they sat, 2022 WL 468702, at *5–6, which were themselves structures or improvements. If the tanks were considered improvements, then attachment would have been irrelevant under paragraph (*c*) because improvements are considered real property if they are "placed upon a foundation whether or not attached to the foundation." Iowa Code § 427A.1(1)(*c*). So even if the tanks were the "kind of property which would ordinarily be removed when the owner of the property moves to another location," *id.* § 427A.1(3), the tanks would still be real property, similar to the situation in *Western Outdoor Advertising Co. See* 364 N.W.2d at 257–58; *see also Rose Acre Farms, Inc.*, 479 N.W.2d at 263 ("[Q]uestions whether the disputed items 'would ordinarily be removed' are irrelevant on the question of taxation under section 427A.1(1)(*c*). Simply put, the exception in section 427A.1(3) does not apply to property described in section 427A.1(1)(*c*) because attachment is not a necessary requirement for taxation under section 427A.1(1)(*c*).").

But because the court of appeals concluded that the tanks in *McDermott Propane* were equipment instead of improvements, they were only real property

under paragraph (*d*) if they were "attached to the buildings, structures, or improvements defined in paragraph 'c.'" *McDermott Propane*, 2022 WL 468702, at *4 (quoting Iowa Code § 427A.1(1)(*d*) (2020)); *accord Rose Acre Farms, Inc.*, 479 N.W.2d at 263 ("[If] items are not attached for purposes of section 427A.1(1)(*d*)," they "would not be taxed as real property because 'attachment' is a necessary factor for taxability of equipment and machinery under section 427A.1(1)(*d*)."). So the court of appeals had to consider whether the tanks were ordinarily removed in determining whether they were nonetheless to be considered not attached as provided in section 427A.1(3) and therefore not taxable as real property under section 427A.1(1)(*d*). *McDermott Propane*, 2022 WL 468702, at *6.

The fact that the parties concede here that the propane tanks are not attached to the saddles does not make removability irrelevant to our ultimate analysis. Equipment is only assessable as real property if it is attached. Iowa Code § 427A.1(1)(*d*). Removability has two uses: (1) where attachment is required to make an item real property, an attached item is nonetheless considered not attached if it "would ordinarily be removed," *id.* § 427A.1(3); and (2) if an item can be removed, its removability is one factor that cuts in favor of classifying it as equipment instead of an improvement, *see Rose Acre Farms, Inc.*, 479 N.W.2d at 263.

With this background, we turn to the question of whether the propane tanks at issue should be assessed as real property.

**E. Growmark's Propane Storage Tanks Are Equipment, Not Improvements.** Neither the term "improvement" nor the term "equipment" is defined in chapter 427A, so we start with their ordinary meaning. *See State v. Wade*, 7 N.W.3d 511, 514 (Iowa 2024) ("In interpreting a law, the words of the

text are of paramount importance. . . . Words in a statute bear their ordinary meanings unless the context indicates that a technical meaning applies."). Black's Law Dictionary defines an "improvement" as "[a]n addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Improvement*, Black's Law Dictionary 904 (12th ed. 2024) (citing *Fixture*, Black's Law Dictionary 778 (12th ed. 2024)). It likens improvements to fixtures, which are "regarded as an *irremovable* part of the real property." *Fixture*, Black's Law Dictionary 778 (12th ed. 2024) (emphasis added) (citing *Improvement*, Black's Law Dictionary 904 (12th ed. 2024)). Black's Law Dictionary defines "equipment" as "[t]he articles or implements used for a specific purpose or activity (esp. a business operation)." *Equipment*, Black's Law Dictionary 677 (12th ed. 2024).

Our caselaw recognizes similar distinctions. Improvements "increase[] the utility of the land" and are "relatively permanent." *Wendling Quarries*, 865 N.W.2d at 642. Equipment, on the other hand, is "an implement," something with a specific purpose. *Id.* Equipment is generally "easily disassembled and removed by reversing the assembly process, and leave[s] no damaging impact on the land" or the item to which it might be attached when it is removed. *Id.*

We must also consider the terms in context. *See Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 681 (Iowa 2022) ("[C]ontext is critical, and context comes from 'the [statutory] language's relationship to other provisions of the same statute and other provisions of related statutes.'" (quoting *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021))). Section 427A.1(1) provides a list of categories of real property. As the general assembly began exempting personal property from taxation, it nonetheless included specific types of property in the list of property considered real property that might otherwise be considered personal

property. *See Rose Acre Farms, Inc.,* 479 N.W.2d at 262 ("[I]t becomes critical whether . . . disputed items . . . are [real or] personal property.").

Equipment is included in paragraph (*d*), where it is considered real property only if it is attached to an item identified in paragraph (*c*)—i.e., items that fit the common understanding of real property: buildings, structures, or improvements. *See* Iowa Code § 427A.1(1)(*c*), (*d*). An improvement, then, should have its common understanding: it is something annexed to the realty in a relatively permanent fashion. *See, e.g., Young v. Iowa Dep't of Transp.,* 490 N.W.2d 554, 556 (Iowa 1992) (holding that three underground gasoline tanks were classified as real estate rather than personal property in a condemnation action where "[u]nder our common law rule personal property becomes a fixture when: (1) it is actually annexed to the realty, or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends to make a permanent accession to the freehold"); *R.C. Maxwell Co. v. Galloway Township*, 679 A.2d 141, 145 (N.J. 1996) ("We believe that the Legislature intended a more restrictive definition of improvement when it created a distinction between the terms 'improvement' and 'personal property affixed to real property.' [The statute] makes sense only when 'improvement' is construed as an addition to land that is obviously, unmistakably, and inherently permanent."); *cf.* 26 C.F.R. § 1.48-1(c) ("[T]he term 'tangible personal property' [for purposes of section 38 property] means any tangible property except land and *improvements thereto, such as buildings or other inherently permanent structures* (including items which are structural components of such buildings or structures). Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property." (emphasis added)).

Applying the above principles to Growmark's propane tanks, we conclude that they are equipment under section 427A.1(1)(*d*). The propane tanks are implements used for a specific purpose within Growmark's fuel distribution operations: to store propane until delivery to its customers. While that storage function precludes the tanks from being considered machinery for manufacturing under paragraph (*e*), *see StateLine Coop.*, 958 N.W.2d at 816, it does not prevent them from being considered equipment used in a commercial activity under paragraph (*d*), *see Griffin Pipe Prods. Co.*, 789 N.W.2d at 775 ("Paragraph (*d*) is a larger classification that might include equipment used *in both commercial and manufacturing activities*, but paragraph (*e*) is a narrower class that applies only for equipment used in manufacturing establishments." (emphasis added)); *see also Equipment*, Black's Law Dictionary 677 (12th ed. 2024) (defining *equipment* as "articles or implements used for a specific purpose or activity (esp. a business operation)").

Growmark's tanks are not permanently affixed to the land or any structure. Even though they have sat on the same site since 1977, the tanks are movable and would do no damage to the surrounding land or to the saddles if they were lifted off the saddles and loaded onto a truck to move elsewhere. *See Wendling Quarries*, 865 N.W.2d at 642 (distinguishing the scale's components from its base and holding the components were not improvements where they were "easily disassembled and removed by reversing the assembly process, and le[ft] no damaging impact on the land or the concrete base"). Growmark's president testified that if Growmark were to move its operations to a different location, it would take the tanks.[3] The PAAB credited this fact in its ruling.

---

[3]Under section 427A.1(3), "the intent of the particular owner" is irrelevant when analyzing removability to determine whether an item is attached. Iowa Code § 427A.1(3). But it may be

Growmark's president also produced quotes to move the tanks, which would cost $28,124 per tank. Compared to a minimum of $180,000 per tank to purchase new replacements, this made it more economically feasible to move the tanks if Growmark did relocate. *Cf. Rose Acre Farms, Inc.*, 479 N.W.2d at 264 (considering evidence about the market for the disputed items and that it "would be economically advantageous for an egg producer to move property like the disputed items rather than to buy new property for the new location" in determining that the property was the kind ordinarily removed). That Growmark purchased the tanks as part of the existing site does not change the fact that if it chose to move its operations to a different site, it would remove the tanks. *See Rose Acre Farms, Inc.*, 479 N.W.2d at 265 ("Section 427A.1(3) contemplates the owner *moving* from the location rather than the owner *selling* the location."). The tanks provide utility to Growmark's fuel distribution operations, not to the land.

In short, we conclude that Growmark's eleven 90,000-gallon propane storage tanks are equipment as contemplated by section 427A.1(1)(*d*). And because the tanks are not attached to the saddles on which they sit, they cannot be assessed as real property. *See Rose Acre Farms, Inc.*, 479 N.W.2d at 263.

**III. Conclusion.**

For the reasons above, we affirm the district court's holding that Growmark's propane tanks are not assessable as real property under Iowa Code section 427A.1.

**Affirmed.**

---

instructive in the more open-ended inquiry under section 427A.1(1), where removability can help shed light on whether an item is an improvement or equipment. *See id.* § 427A.1(1).